[Cite as *State v. Flemming*, 2026-Ohio-2935.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                  :

    Plaintiff-Appellee,               :

                                                  No. 115757

    v.                                             :

BILLY FLEMMING,                           :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-701445-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Paolucci, Assistant Prosecuting Attorney, *for appellee.*

John B. Gibbons, *for appellant.*

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendant-appellant Billy Flemming appeals his convictions related to his trafficking of "Jane." For the reasons that follow, we affirm.

**Procedural History and Relevant Facts**

{¶ 2} In 2025, appellant was charged with trafficking in persons, in violation of R.C. 2905.32(A)(1); compelling prostitution, in violation of R.C. 2907.21(A)(1), with a human-trafficking specification in violation of R.C. 2941.1422(A); promoting prostitution, in violation of R.C. 2907.22(A)(2), with a human-trafficking specification in violation of R.C. 2941.1422(A); corrupting another with drugs, in violation of R.C. 2925.02(A)(2); and failure to stop after an accident, in violation of R.C. 4549.02(A)(1)(a).

{¶ 3} Prior to the commencement of trial, appellant entered a guilty plea to a charge of failure to stop after an accident. He also executed a written waiver of his right to a jury trial, and the remaining charges were tried to the bench. The following evidence was adduced at trial.

{¶ 4} In July 2023, the Northeast Ohio Human Trafficking Task Force received a tip regarding appellant. The task force began to investigate and learned that in early 2023, appellant brought Jane from Arizona to Cleveland and was requiring her to perform sex work.

{¶ 5} Jane testified that she had had a difficult childhood because of her mother's and brother's struggles with drug addiction. Despite her rough childhood, she was able to graduate high school and was employed when she met appellant in Arizona. When they met, Jane was 20 years old and appellant was in his forties. At first, Jane was not interested in appellant because of the age difference and because he appeared to be homeless. Jane saw appellant frequently at the gas station, and

she would give him food and money. Appellant would repeatedly tell Jane that she was beautiful. Appellant's comments progressed to comments of a sexual nature. Appellant indicated that he wanted to have a romantic relationship with Jane.

{¶ 6} Jane eventually realized that appellant was dealing drugs at the gas station. One day, appellant gave Jane some pills to try; he did not charge her for them. Jane, thinking the pills were oxycodone, consumed the pills, and liking them, she bought some from appellant. Unbeknownst to Jane, the pills were fentanyl, not oxycodone. Jane quickly became addicted to fentanyl and eventually lost her job and her place to live.

{¶ 7} Jane moved into a tent with appellant. Jane testified that, at the time, she had no plans to perform sex work to obtain drugs. In early 2023, appellant informed Jane that they would be moving to Cleveland because he wanted to see his mother, who had cancer. Appellant stole a vehicle and took Jane to Cleveland. In April 2023, appellant was involved in a car accident in which he spun out into a highway median and totaled the car, leaving Jane without any form of transportation. Appellant continued to provide Jane with drugs, and, in addition to fentanyl, she became addicted to methamphetamine, PCP, and cocaine.

{¶ 8} Appellant and Jane eventually ran out of money and were homeless. Appellant told Jane that she needed to make money by performing sex work. Jane testified she did not want to perform this work. According to Jane,

> I had — I felt like we were — well, he brought me here. Before that in Arizona we were in a relationship. Here I believed we were in a relationship. And I didn't understand how he could bring me here

where I didn't know anybody at all and then ask me to do something like that when I already felt so alone. And so like out of my — so away from everything that I knew and loved. It was really tough.

(Tr. 34.)

{¶ 9} Ultimately, according to Jane, she did not want to "upset him or cause any more like pain or stress," so she began working. (Tr. 37.) Jane testified that appellant would talk to a prospective customer, "set up how much for what he wanted and then he would tell me to go do that and then tell me that it was already paid for so that I need to go do it." *Id.* Jane testified that it happened "almost every other day" and on those days, it would occur multiple times, and appellant was in control of how many men she saw. (Tr. 39.)

{¶ 10} Appellant continued to provide Jane with drugs so long as she continued to work. Appellant himself also did drugs, but he did not take fentanyl. Jane testified that appellant provided her with just enough drugs to keep her from getting "dope sick" and that she only fell ill when she was withdrawing from fentanyl.

{¶ 11} Jane testified that that she did not want to work but she was fearful of appellant. When asked what would happen if she did not work, Jane testified that appellant was violent. According to Jane, appellant would punch, kick, and hit her with objects if she did not have her earnings or otherwise failed to meet his expectations. Jane testified that she was unable to escape from appellant — she had no family or friends in the area, nor did she have money to return to Arizona.

{¶ 12} In July 2023, Jane and appellant were arrested. Jane informed police of what had happened to her, although she was initially hesitant to cooperate. Eventually, Jane became sober.

{¶ 13} Cuyahoga County Sheriff's Office Detective John Hadam ("Detective Hadam") testified that he is assigned to the department's human trafficking task force. The detective told the court that drug usage is common among sex workers and their traffickers. He explained that his involvement in the case began when he received a tip from a fellow detective that a sex worker was working for appellant in an area of Cleveland where street-level sex work regularly occurs. Detective Hadam was unable to locate Jane for approximately a year. He finally located her and interviewed her. During his investigation, the detective secured appellant's cell phone and discovered several "Cash App" payments in either appellant's or appellant's brother's name.

{¶ 14} According to the detective, drug addiction is a common way traffickers exert control over their victims. It is also common for traffickers to abuse the people that work for them as a form of control; traffickers often develop a romantic relationship with the people they traffic to emotionally manipulate them.

{¶ 15} Appellant's sister testified on his behalf. She testified that she had not been in contact with her brother for several years when she learned he was in Cleveland, where she also lived. According to the sister, both appellant and Jane were in poor physical and mental condition. Her family provided appellant and Jane with a place to live, food, and clothing on the condition they find alternative housing

within 90 days or enroll themselves in a drug rehabilitation program.  The sister helped appellant and Jane obtain identification and offered help for Jane to return to Arizona, which, according to the sister, she refused.

{¶ 16} The trial court convicted appellant of all counts and specifications and sentenced him to ten to 15 years in prison.  This appeal followed.

## Assignments of Error

I.  The trial court erred and denied the defendant-appellant his right to due process of law by failing to grant [appellant's] motions for judgment of acquittal based on insufficient evidence produced by the State to establish the offense of trafficking in person as charged in count one of the indictment.

II.  The defendant-appellant was denied his right o[f] due process of law, as provided for in the United States and Ohio Constitutions when the trial court committed plain error.

III.  The trial court erred and denied the defendant-appellant his right to due process of law as provided for in the federal and Ohio Constitution[s] by failing to conduct a hearing on [appellant's] pro se motion to disqualify and remove his counsel and make determination of that motion.

IV.  The trial court erred and denied the defendant-appellant his right to due process by conducting a legally inadequate colloquy to determine i[f] [appellant's] waiver of the right to trial by jury was clearly and intelligently made.  The failure of the trial court is subject to the plain error standard.

## Law and Analysis

### State Provided Sufficient Evidence to Support Appellant's Conviction for Trafficking in Persons

{¶ 17} In the first assignment of error, appellant argues that the State failed to provide sufficient evidence to support his conviction for trafficking in persons.

{¶ 18} A sufficiency of the evidence analysis reviews whether, as a matter of law, the evidence is adequate to support the factfinder's verdict. *State v. Mattox*, 2018-Ohio-992, ¶ 23 (2d Dist.). The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} Appellant was convicted of trafficking in persons, in violation of R.C. 2905.32(A)(1), which provides that

[n]o person shall knowingly recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, or knowingly attempt to recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, another person if either of the following applies:

(1) The offender knows that the other person will be subjected to involuntary servitude or be compelled to engage in sexual activity for hire . . . .

{¶ 20} R.C. 2905.32(B) provides:

For a prosecution under division (A)(1) of this section, the element "compelled" does not require that the compulsion be openly displayed or physically exerted. The element "compelled" has been established if the state proves that the offender overcame the victim's will by force, fear, duress, intimidation, or fraud, by furnishing or offering a controlled substance to the victim, or by manipulating the victim's controlled substance addiction.

{¶ 21} Appellant contends that there was insufficient evidence to support his human-trafficking conviction because Jane had been involved with drugs prior to meeting appellant; Jane was afforded multiple opportunities to address her drug addiction and did not; there was no evidence corroborating Jane's version of events;

and she only told police she had been trafficked to avoid prison time for her latest conviction.

{¶ 22} Essentially, appellant is making a credibility argument. Our review, however, is whether the State provided sufficient evidence to support appellant's conviction. Witness credibility is not part of that review. *See State v. Warren*, 2026-Ohio-1193, ¶ 31, quoting *State v. Haskins*, 2024-Ohio-5908, ¶ 37 (8th Dist.) ("[W]hen evaluating evidence's sufficiency, a reviewing court does not contemplate witness credibility or weigh the evidence; rather, 'the reviewing court assumes that witnesses testified truthfully and evaluates whether that testimony, along with any other direct or circumstantial evidence presented at trial, satisfies each element of the offense.'").

{¶ 23} Jane testified to the following. Before Jane met appellant, she was prescribed oxycodone for pain. When Jane encountered appellant, he gave her pills for free; she thought the pills were oxycodone. The pills, however, were fentanyl. Prior to meeting appellant, Jane had never tried fentanyl and was opposed to the drug. Once Jane was addicted to fentanyl, appellant brought Jane to Cleveland, away from friends and family, thereby isolating her.

{¶ 24} Jane, who was much younger than appellant, relied on him for everything because she was without money, transportation, or a place to live in Cleveland. When they became homeless, appellant told Jane she had to perform sex work for money and if she did not do what appellant told her to do, he would

physically abuse her. Appellant also controlled the money Jane made and would provide Jane with just enough drugs to keep her from getting "dope sick."

{¶ 25} In *State v. Warren*, 2015-Ohio-3671 (8th Dist.), this court upheld a trafficking-in-persons conviction based on similar facts.[1] The defendant, who trafficked multiple women, met one of his victims, A.T., at a bus stop. A.T. was 18 years old at the time and homeless. The defendant gave A.T. a place to live. A.T. testified the defendant decided how much money she could charge for her sex work, and she was required to hand over all her earnings. The defendant had a set of rules, and if A.T. broke them, he would become violent. *Id*. at ¶ 15.

{¶ 26} Another victim, S.L., met the defendant through a prostitution ad she posted when she was 17 years old. S.L. was addicted to drugs. Like with A.T., the defendant would decide the price S.L. was to charge. She gave him all the money she earned in exchange for food, clothing, and drugs. The defendant eventually introduced S.L. to heroin. S.L. testified that as her addiction worsened, she would feel physically ill if she did not have any heroin, so she continued working so the defendant would provide her with drugs. S.L. testified that "it was her choice to engage in prostitution; however, if she got into trouble with [the defendant] it would affect the amount of heroin she was receiving." *Id*. at ¶ 24.

{¶ 27} In another instructive case, this court upheld a human-trafficking conviction relating to a 19-year-old victim. In *State v. Brown*, 2019-Ohio-1235

---

[1] When *Warren* was decided, the statute's definition of compel did not include manipulating a victim's addiction to drugs or alcohol. R.C. 2905.32 was amended in 2022 to include such compulsion.

(8th Dist.), the appellant argued that sex work by a willing adult is not human trafficking. In upholding the conviction, this court explained:

> [W]hen a person decides to prostitute oneself, that is not trafficking in persons. However, when another individual takes an affirmative action to persuade, attract, or enable another, is actively involved in aiding in the act of prostitution, profits from another's prostitution, and exercises some dominion or control over the individual, that is trafficking in persons . . . . Moreover, the statute does not contemplate that the victim must have knowledge that these events will occur. The victim's mental state is irrelevant; it is the mental state and intentions of the defendant that are the focus of the offense of trafficking in persons.

*Id.* at ¶ 47.

{¶ 28} As stated, once Jane was addicted to multiple drugs, including fentanyl, appellant told Jane she had to perform sex work. Jane testified that she first objected to having to work, but she was alone with no friends or family to help her. She was severely addicted, mainly to fentanyl, which appellant provided to her. Appellant provided Jane with just enough drugs to prevent her from becoming "dope sick." If Jane did not work or meet appellant's expectations, he became violent. Appellant controlled Jane's actions, her money, and her addiction; the State provided ample evidence appellant compelled Jane to engage in sex work.

{¶ 29} In light of the above, the State provided sufficient evidence of trafficking in humans. The first assignment of error is overruled.

**The Trial Court's Admission of Jail Calls Was Not Plain Error**

{¶ 30} In the second assignment of error, appellant argues that the trial court committed plain error when it admitted his jail calls. During trial, the State played

various recordings of phone calls appellant made while incarcerated. Defense counsel did not object; therefore, our review is for plain error.

{¶ 31} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To prevail under a plain-error analysis, the appellant bears the burden of demonstrating, but for the error, the outcome of the trial court proceeding would have been different." *State v. Clark*, 2026-Ohio-1286, ¶ 7 (8th Dist.). Additionally, the Ohio Supreme Court has long held that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances[,] and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

{¶ 32} This court has previously noted that statements made by a defendant in a jail call may qualify as an admission of a party opponent under Evid.R. 801(D)(2)(a). *State v. Powell*, 2023-Ohio-2770, ¶ 44 (8th Dist.). "'Admissions' have been defined to include when a defendant attempts to prevent a witness from testifying. Even though not an admission to the ultimate issue, it was an admission of a party-opponent for the purposes of Evid.R. 801(D)(2)." *Id.*, citing *State v. Womack*, 2020-Ohio-574, ¶ 21 (8th Dist.).

{¶ 33} In this case, Detective Hadam testified regarding phone calls appellant made while incarcerated; the content of those calls revealed that appellant was trying to contact Jane, despite a no-contact court order. One call, from another inmate, mentioned, "Uncle Billy is in here." "Uncle Billy" then got on the phone and

began to talk about the charges he was facing, including human trafficking. Detective Hadam verified appellant was using another inmate's account. During the call, appellant told the person on the other line to try and find Jane so she could tell his attorney she was not trafficked. In another call, appellant spoke to his sister. The sister said she would contact Jane's family before trial.

{¶ 34} Appellant also contends that the calls were not admissible because they were other acts evidence, prohibited by Evid.R. 404(B). "Evid.R. 404(B) covers other acts that are extrinsic to the original crime, not acts that are intrinsic or tied to the original crime." *Powell*, 2023-Ohio-2770, ¶ 45 (8th Dist.). Appellant's attempt to get others to persuade Jane to assist him in his defense could be construed as an attempt to avoid conviction for the underlying offense. "Courts have found that such an attempt establishes a defendant's consciousness of guilt and is an admission and, therefore, not 'other acts.'" *Id.*

{¶ 35} Based on the above, the jail calls fall within the Evid.R. 801(D)(2)(a) exception. Moreover, even if we deemed the phone calls inadmissible, we would not conclude there was plain error. There was overwhelming evidence appellant committed those crimes for which he was convicted.

{¶ 36} The second assignment of error is overruled.

**Trial Court Did Not Err When it Did Not Hold a Hearing on Appellant's Pro Se Motion**

{¶ 37} In the third assignment of error, appellant argues that the trial court erred by failing to hold a hearing on his pro se motion to remove defense counsel.

{¶ 38} During pretrial proceedings, appellant filed several pro se motions, including a July 11, 2025 "Motion to Dismiss Counselor."

{¶ 39} Appellant fails to support his argument with citation to any authority. App.R. 16(A)(7) provides:

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following:
>
> . . .
>
> (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.

{¶ 40} Appellate courts do not have any duty "to root out" an argument in support of an assignment of error, *State v. Carman*, 2008-Ohio-4368, ¶ 31 (8th Dist.), and have the discretion to disregard any assignment of error that fails to include citations to the authorities in support. *Robinette v. Bryant*, 2015-Ohio-119, ¶ 33 (4th Dist.). We are not obligated to construct or develop appellant's arguments for him or to guess at undeveloped claims.

{¶ 41} "It is well established that although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to 'hybrid representation.'" *State v. Mongo*, 2015-Ohio-1139, ¶ 13, quoting *State v. Martin*, 2004-Ohio-5471, paragraph one of the syllabus. "'The right to counsel and the right to act pro se 'are independent of each other and may not be asserted simultaneously.'" *Mango* at *id.*, quoting *Martin* at *id.* "[W]hen counsel represents a defendant, 'a trial court may not entertain a defendant's pro se motion.'"

*Mango* at ¶ 14, quoting *State v. Washington*, 2012-Ohio-1531, ¶ 11 (8th Dist.); *see also State v. Davis*, 2006-Ohio-5039, ¶ 12 ("[W]here a defendant who is represented by counsel files pro se motions and there is no indication that defense counsel joins in those motions or indicates a need for the relief sought by the defendant pro se, such motions are not proper and the trial court may strike them from the record.").

{¶ 42} Based on the record before us — and in absence of authority cited to the contrary — we cannot say that the trial court erred when it did not hold a hearing on appellant's pro se motion. Although the best practice would be for the trial court to address the motion on the record, there is no requirement that the court hold a hearing on the motion. Moreover, we note that prior to trial, appellant indicated on the record that he was satisfied with his attorney.

{¶ 43} The trial court did not err when it did not hold a hearing on appellant's pro se motion. The third assignment of error is overruled.

**Appellant's Jury Waiver Was Voluntary, Knowing, and Intelligent**

{¶ 44} In the fourth assignment of error, appellant challenges the waiver of his right to trial by jury. According to appellant, the court should have asked what medications he was taking and how his mental health was and the court's failure to do so rendered the waiver less than voluntary, knowing, and intelligent.

{¶ 45} Pursuant to R.C. 2945.05, the entirety of a defendant's jury trial waiver must be in writing. *State v. Lomax*, 2007-Ohio-4277, ¶ 9. The Ohio Supreme Court explained that "to be valid, a waiver [under Section 2945.05] must meet five

conditions. It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *Id*. The waiver of a jury trial must be voluntary, knowing, and intelligent. *State v. Osie*, 2014-Ohio-2966, ¶ 45. "'[A] written waiver is presumptively voluntary, knowing, and intelligent.'" *Osie* at *id*.

{¶ 46} In this case, appellant executed a written waiver of jury trial on August 25, 2025. The waiver stated:

> I, BILLY FLEMMING, the Defendant in this cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a judge of this Court of Common Pleas. I understand that I have a right, under the Constitutions and laws of both the United States and the State of Ohio, to a trial by a jury of twelve, and that no verdict could be made by a jury, except by agreement of all twelve members of that jury. I further state that no threats or promises have been made to of induce me to waive this right, and that I am not under the influence of any drugs, alcohol, or medication that would affect my decision.

{¶ 47} On the record, the court asked if appellant was under the influence of drugs, alcohol, or medication. Appellant stated that he was taking medication, which the court confirmed was prescription medication. There is no requirement that the court inquire further. As to appellant's mental health, there was no concern made known to the court by appellant or his counsel; therefore, the court did not err to inquire into the status of appellant's mental health.

{¶ 48} In accepting his waiver, the trial court informed appellant of his right to a jury trial and asked if he understood that he had a right to a jury trial. Appellant confirmed he understood. Appellant also confirmed no threats or promises were

made to induce his choice to waive a trial by jury.  Appellant is unable to overcome the presumption that his waiver was voluntary, knowing, and intelligent.

{¶ 49} The fourth assignment of error is overruled.

{¶ 50} Appellant was able to identify and leverage Jane's vulnerabilities — namely drug addiction and isolation — in order to create dependency so he could compel her to perform sex work.  There was sufficient evidence to support his conviction for trafficking in persons, and the trial court did not err in its handling of pro se motions, appellant's jury trial waiver, or in the evidence presented at trial.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR